UNITED STATES *v.* GLANSON CO. (No. 5014)[1]

United States Court of Customs and Patent Appeals, June 14, 1960

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Daniel I. Auster* and *Samuel D. Spector*, trial attorneys, of counsel), for the United States.
*Michael Stramiello, Jr.*, for appellee.

[Oral argument April 6, 1960, by Mr. Spector and Mr. Stramiello, Jr.]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[2]

SMITH, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, A.R.D. 110, affirming that of a single judge sitting in reappraisement and holding the merchandise involved, consisting of cribbage boards of two types, to be dutiable on the basis of a cost of production of $5.55 and $11.10 per dozen respectively. The Government has appealed, contending that the duty should have been assessed, as found by the appraiser, on the basis of a foreign value of $7.40 and $14.40 per dozen respectively.

It is agreed by the parties that there is no export value, and accordingly the foreign value, if there is one, is the proper basis of appraisal. The parties initially agreed that there was a foreign value, although they differed as to what it was. Both the single judge and the Appellate Term, however, found that there was no foreign value. We shall first consider that finding.

Foreign value is defined in Section 402(c) of the Tariff Act of 1930 as follows:

Sec. 402(c), Tariff Act of 1930

(c) Foreign Value.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The pertinent facts are accurately stated in the opinion of the Appellate Term as follows:

The record herein with respect to the question of foreign value of such merchandise, as that term is prescribed under section 402(c) of the Tariff Act of 1930, as amended, *supra*, clearly establishes that, on or about the date of

___

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28, United States Code.

112

exportation, the manufacturer of the involved cribbage boards freely offered the merchandise for sale for home consumption in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, at three different price levels which were determined solely by the category of the purchaser and not the quantity purchased. The prices of the manufacturer to the various categories of purchasers are as follows:

| No. | To Jobbers and wholesalers | To chain and department stores | To retailers, other than chain and department stores |
|---|---|---|---|
| 28 | $5.55 per dozen | $6.66 per dozen | $7.40 per dozen |
| 29 | 11.10 per dozen | 13.30 per dozen | 14.40 per dozen |

From the record, there can be no dispute that the cribbage boards were offered and sold to all who cared to purchase them and that the above categories of purchasers constituted "all" who cared to purchase. The record amply supports the fact that sales to the wholesalers constituted the major portion of sales by the manufacturer. Plaintiff's exhibit 5, a supplemental affidavit of P. Roug-Jensen, establishes that the suggested resale prices of the involved cribbage boards were established by the manufacturer and apparently adhered to, since there were no instances of sales made at prices lower than those suggested.

The Appellate Term held that a foreign value could not be ascertained, first because the manufacturer controlled the resale prices in Canada and hence the merchandise was not freely offered for sale there, and secondly because there was no single price at which it was offered to all purchasers.

The only evidence cited by the Appellate Term in support of the first holding was an affidavit of P. Roug-Jensen, plant manager of the manufacturer and exporter of the instant merchandise, in which he stated that the manufacturer suggested to purchasers the prices at which the merchandise was to be resold and that "upon information and belief" the boards were resold at those prices. In our opinion, those statements do not provide support for a finding that there was a controlled market. Even assuming that the allegation based on information and belief can be accepted as establishing the facts alleged, there is still nothing to show that resale at the suggested prices was anything other than voluntary.

The above comments are equally applicable to an affidavit of record by W. Elliot Thomas, the departmental manager of a Canadian firm which purchased boards from the manufacturer of the merchandise here involved. Like Roug-Jensen, Thomas referred to the prices "suggested" by the manufacturer, and although he stated that his firm resold at those prices, he gave no indication that they were in any way compelled to do so or that they could not have continued to purchase boards if they had resold at any other price.

The record also contains a report of a United States Customs Agent in Canada to the effect that seven Canadian purchasers of the boards

were interviewed and that all of them stated they knew of no restriction imposed by the manufacturer relating to resale.

In our opinion the record provides no evidence to support the Appellate Term's holding of a controlled market in Canada.

With respect to the holding below that there was no single price at which the merchandise was freely offered for sale to all purchasers, we are of the opinion that the amount at which it was offered to retailers other than chain and department stores constituted such a freely offered price. ▉ The lower prices offered to jobbers and wholesalers and to chain and department stores merely represent discounts to favored classes of purchasers. This court has repeatedly held that the existence of such discounts does not preclude the finding of a foreign value. *Adolph Goldmark & Sons Corp.* v. *United States*, 22 CCPA 358, T.D. 47378; *American Shipping Co.* v. *United States*, 29 CCPA 250, C.A.D. 198; *United States* v. *Mexican Products Co.*, 28 CCPA 80, C.A.D. 129, and cases there cited.

It is noted that the importer has not argued here in support of the holding below that there is no foreign value.

The importer contends that if a foreign value is to be found here it should be on the basis of the price offered to jobbers and wholesalers since the record shows that the majority of the manufacturer's sales were made to purchasers of that type. However, as was said in *United States* v. *Richard & Co.*, 15 CCPA 143, T.D. 42216, ▉ with respect to foreign value, "The law is not concerned with the persons who buy, but the manner in which they buy." ▉ The comparative volume of sales is pertinent where the merchandise is sold at different wholesale prices depending upon the quantity purchased, but where, as is the case here, the price to any given purchaser is the same regardless of quantity, it is immaterial what classes of purchasers buy the most. In both *American Shipping Co.* v. *United States*, and *United States* v. *Mexican Products Co.*, *supra*, the foreign value was found to be the price charged to the least favored class of purchasers, notwithstanding the fact that most of the sales were made to more favored purchasers who paid lower rates.

It is true that in *Adolph Goldmark & Sons Corp.* v. *United States*, *supra*, the court commented on the fact that the majority of the sales were made to purchasers of the class paying the highest price, and indicated that that circumstance afforded an additional reason for fixing the foreign value as the highest price, but the decision is not, in our opinion, authority for a holding that the foreign value will be the price paid by a favored class of purchasers if most of the sales were made to them. To the extent that such a holding might be read into the decision it would be necessary to regard it as having been

overruled by the *American Shipping Co.* and *Mexican Products Co.* cases.

For the reasons given we hold that the record establishes that the instant merchandise has a foreign value, namely $7.40 per dozen for the No. 28 board and $14.40 per dozen for the No. 29, as appraised. It is accordingly unnecessary to consider whether there is a United States value or whether the cost of production found below is correct.

The judgment of the Appellate Term is *reversed*.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Daniel I. Auster* and *Samuel D. Spector*, trial attorneys, of counsel), for the United States.